IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. FARRELL | : | |
|     Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | |
| | : | |
| COUNTY OF MONTGOMERY | : | JURY TRIAL DEMANDED |
|     Defendant | : | |

## COMPLAINT

**I.  INTRODUCTION**

1.  Plaintiff, Thomas J. (T.J.) Farrell, brings this action under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2611, et seq.  T.J. seeks back pay and back benefits, reinstatement or front pay and front benefits, liquidated damages, interest, negative tax consequence damages and attorney's fees and costs (including expert witness fees) from Defendant, County of Montgomery (The County).

**II.  JURISDICTION AND VENUE**

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 2617.

3.  The unlawful acts and practices of The County were committed within the Commonwealth of Pennsylvania.

**III.  PARTIES**

4.  Plaintiff, T.J., resides at 1103 Nancy Drive, Croyden, PA 19021.

5.  Defendant, The County, is a municipality/political subdivision of the Commonwealth of Pennsylvania with an office located in Norristown, PA.

6. At all material times hereto, The County acted through its employees, agents, representatives and/or servants who were acting within the course and scope of their employment and authority.

## IV. FACTUAL BACKGROUND

7. T.J. started working at The County in May 2008 as a police dispatcher. He held that position for the duration of his employment with The County.

8. In September 2009, T.J. sustained what was believed to be a stroke while he was working. He was flown by medical helicopter from work to a hospital. He subsequently applied for and was approved for an FMLA leave of absence for approximately three weeks.

9. On approximately September 9, 2010, T J. broke his wrist in a non-work related fall.

10. T.J. subsequently emailed his supervisor, Sean Petty (Petty), Deputy Director of Public Safety, to inform him of his medical condition and advise Petty he would be out of work. He followed up this email with several phone messages to Petty apprising Petty of his potential return to work status.

11. Petty ultimately returned T.J.'s messages and told him that he had exhausted his sick time and the only way he could keep his job would be to obtain approval from human resources for an FMLA leave of absence.

12. Accordingly, T.J. contacted The County's human resources department and spoke with Deborah Wilson (Wilson). Wilson informed T.J. that no one had notified her that he was out of work.

13. On approximately October 1, 2010, Wilson mailed T.J. a Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act). The Notice informed T.J. that he needed to return to The County a certification completed by his physician by October 18, 2010.

14. On October 14, 2010, T.J. took the FMLA certification to his physician's, Dr. Benjamin Chu's, office at Abington Orthopaedic Specialists, P.C. (AOS). He was advised by that office that FMLA certifications were handled by a sister office of the practice located in Willow Grove.

15. On October 18, 2010, T.J. left several voice mails for the AOS Disability Department, which is the part of AOS' practice that responds to and provides FMLA certifications to patients and their employers.

16. Having not heard from AOS, T.J. contacted Wilson to request an extension of time in which to submit the FMLA certification. Wilson granted his request and gave him until October 26, 2010 to return the FMLA certification.

17. On October 19, 2010, Maureen Condron, AOS Disability Department employee, contacted T.J. to inform him that AOS had his FMLA certification, and that it would be completed and sent to The County by the October 26 deadline.

18. On October 22, 2010, T.J. Farrell contacted AOS several times. Each time he called AOS he was directed to voice mail. Each time he left a message stating that the FMLA paperwork must be received by his employer by October 26 or he would lose his job.

19. Ms. Condron at AOS contacted T.J. on October 22 and advised him that AOS had his FMLA paperwork and there was a $10 charge to complete the paperwork and fax

it to The County.  T.J. told Ms. Condron that he would have his grandmother contact the office to pay the charge by phone with her credit card as he did not have a credit card available to use at that time.

20.  T.J.'s grandmother called AOS on June 22, 2011 and paid the $10 fee required by AOS to fax the FMLA certification to The County.  Ms. Condron told her that T.J.'s paperwork would be faxed to The County "today" (October 22, 2010).

21.  On October 28, 2010, T.J. received a letter dated October 26, 2010 from Wilson stating, in part, that as of October 26 he had not returned to his job, nor had he provided documentation substantiating the need for his absence from work and therefore The County had no alternative but to accept his resignation effective immediately.

22.  T.J. immediately called human resources and spoke with Wilson, who advised him that she had not received his FMLA paperwork.  He explained that his physician's office had assured him and his grandmother that the FMLA paperwork was faxed on October 22.  Wilson told him she did not see the paperwork and there was nothing she could do.  T.J. asked Wilson to check again for a fax, which she reluctantly agreed to do.

23.  Immediately thereafter, Wilson came back on the phone and told T.J. that she did have an FMLA form, however there was no name on it.  T.J. asked her whether the FMLA form was from Abington Orthopedics and signed by Dr. Benjamin Chu, and Wilson confirmed that it was.  He specifically informed her that was his FMLA form.  Wilson replied that the FMLA form did not have his name on it, that today is past the deadline, and that "there is nothing I can do".

24. T.J. suggested to Wilson that The County call Abington Orthopedics to verify that the FMLA papers were for him, and to request that AOS send them again with his name on them. Wilson refused to do so.

25. T.J. then contacted Petty who told him that it was out of his hands and that in his eyes T.J. had abandoned his job. T.J. denied that he abandoned his job and said that he had called and emailed Petty several times with updates to which he never responded.

26. On November 1, 2010, Ms. Condron at AOS informed T.J. that she believed she had faxed and mailed his FMLA certification to The County on October 25, 2010.

27. Later in November 2010, Ms. Condron at AOS clarified that she had only mailed and not faxed T.J.'s FMLA certification to the County on October 25, 2010.

28. Subsequent to October 28, The County stated that it received T.J.'s FMLA certification by mail on October 27, 2010.

29. T.J. is an "eligible employee" under the FMLA.

30. T.J.'s illness constituted a "serious health condition" under the FMLA.

31. T.J. had an illness, impairment or medical condition that involves continuing treatment by a health care provider for a period of incapacity of more than three consecutive days and treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider.

32. T.J. was entitled to take up to 12 work weeks of unpaid leave for his serious health condition without repercussions pursuant to the FMLA.

33. The County is an "employer" under the FMLA.

34.  The County illegally refused to grant T.J.'s request for FMLA leave and illegally terminated him in retaliation for asserting his rights under the FMLA.

## V.   CLAIMS

### COUNT I – T.J. Farrell v. The County
### FMLA – INTERFERENCE and RETALIATION

35.  Paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36.  The acts, failures to act and conduct of The County set forth above constitute interference with T.J.'s substantive rights and retaliation against T.J. for exercising his rights under the FMLA.

WHEREFORE, Plaintiff, Thomas J. Farrell, respectfully demands judgment in his favor and against Defendant, County of Montgomery, for back pay and back benefits, reinstatement or front pay and front benefits, liquidated damages, interest, negative tax consequence damages, attorney's fees and costs (including expert witness fees), and declaratory relief that the conduct engaged in by The County violated the FMLA and such other relief as the Court shall deem proper.

Respectfully submitted,

By: __SMP2861__
Nancy B.G. Lassen (Pa.Atty.Id.No. 42961)
Scott M. Pollins (Pa.Atty.Id.No. 76334)
**Willig, Williams & Davidson**
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
(215) 656-3638/3693 (phone)
(215) 561-5135 (fax)
nlassen@wwdlaw.com (email)
spollins@wwdlaw.com (email)

Attorneys for Plaintiff, Thomas J. Farrell

Date:     10/11/11